Not for Publication

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JESSICA A. NUNEZ & JOSE NUNEZ,<br><br>Plaintiffs,<br><br>v.<br><br>COSTCO WHOLESALE CORPORATION, *individually & d/b/a COSTCO, et al.*,<br><br>Defendants. | Civil Action No.: 22-5531 (ES) (MAH)<br><br>OPINION |

SALAS, DISTRICT JUDGE

Before the Court is a Motion for Summary Judgment filed by defendant Costco Wholesale Corporation ("Defendant" or "Costco"). (D.E. No. 33 ("Motion" or "Mot.")). Defendant seeks summary judgment on plaintiffs Jessica A. Nunez and Jose Nunez's (together, "Plaintiffs") claim for negligence resulting from a slip-and-fall accident involving Ms. Nunez at one of Costco's warehouse locations in New Jersey. (*See id.*; *see also* D.E. No. 33-1 ("Mov. Br."); D.E. No. 1-2 ("Complaint" or "Compl.")).[1] Plaintiffs filed an opposition (D.E. No. 35 ("Opp. Br.")), and Defendant filed a reply (D.E. No. 36 ("Reply Br.")). Having reviewed the parties' submissions,

---

[1] Although Defendant asserts that it requests summary judgment on "all claims asserted against Costco," (Mov. Br. at 9), the Motion is silent as to Count II of the Complaint—Mr. Nunez's claim for loss of consortium. (*See generally* Mov. Br.). The absence of any arguments that relate directly to Count II is of no moment because Count II is derivative of Count I. As discussed herein, because the Court finds that summary judgment in Defendant's favor is appropriate as to Plaintiffs' claim for negligence under Count I, Count II of the Complaint must be dismissed. *See, e.g.*, *Tichenor v. Santillo*, 527 A.2d 78, 82 (N.J. App. Div. 1987) ("A *per quod* claim is only maintainable by reason of a spouse's personal injury. It depends upon and is incidental to the personal injury action . . . The derivative claim can rise no higher than the personal injury claim of the other spouse." (citing *Prosser & Keaton on Torts* (5th Ed. 1984) § 125 at 938))).

the Court decides the Motion without oral argument.  *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

For the following reasons, Defendant's Motion for Summary Judgment is **GRANTED**.

## I.  BACKGROUND[2]

On March 3, 2022, while shopping at the Clifton Costco Warehouse with her son around

7:45 P.M., Ms. Nunez slipped and fell on at least one blueberry on the floor in the meat department.

(Def. SUMF ¶ 1; Pls. Resp. SUMF ¶ 1).  As the result of her fall, Ms. Nunez suffered a fracture of

her left patella, which required emergency surgery.  (Pls. Supp. SUMF ¶ 33, Def. Resp. SUMF ¶

33).  Ms. Nunez reports that "this emergency surgery left her with substantial medical bills, lost

time from work, and changes in her employment."  (Pls. Supp. SUMF ¶ 33, Def. Resp. SUMF ¶

33).[3]

***Blueberry Packaging.***    Both parties agree that Costco sells blueberries packaged in

clamshell containers with "pinch points" at each corner, (Def. SUMF ¶ 4; Pls. Resp. SUMF ¶ 4),

and that Costco stores blueberries "exclusively" in the produce department, which is about 200

feet from the meat department—where Ms. Nunez fell (Def. SUMF ¶ 6; Pls. Resp. SUMF ¶ 6).

Plaintiffs point to Costco employees' testimony in the record and add that the containers "are not

always taped" depending on the vendor and that "sometimes the plastic containers pop open."

(Pls. Resp. SUMF ¶ 4 (citing Def. Ex. G at 190, 20:19–25 & Def. Ex. H. at 242, 21:12–25)).

---

[2]        Unless otherwise noted the facts discussed herein are from (i) Defendant's Statement of Undisputed Material
Facts (D.E. No. 33-2 ("Def. SUMF")); (ii) Plaintiffs' response to Defendant's Statement of Undisputed Material Facts
(D.E. No. 35-1 at 1–4 ("Pls. Resp. SUMF")); (iii) Plaintiffs' Supplemental Statement of Undisputed Material Facts
(D.E. No. 35-1 at 5–16 ("Pls. Supp. SUMF")); and (iv) Defendant's response to Plaintiffs' Supplemental Statement
of Undisputed Material Facts (D.E. No. 36-1 ("Def. Resp. SUMF")).  The Court also considered the declaration and
accompanying exhibits A to J that Defendant submitted in support of its Motion (*see* D.E. No. 33-3, D.E. No. 33-5,
and D.E. No. 34 ("Def. Ex. __"), and the certification and accompanying exhibits A to D that Plaintiffs submitted in
opposition to Defendant's Motion (*see* D.E. No. 35-2 ("Pls. Ex. __")).  All pin citations to the parties' exhibits are to
the page numbers automatically generated by the Court's CM/ECF Case Management System.

[3]        Defendants deny "that any of the statements contained in this paragraph are material to Costco's summary
judgment motion on liability," but admit regardless "that Plaintiffs' characterization of the damages alleged in
Plaintiffs' Answers to Interrogatories is accurate."  (Def. Resp. SUMF ¶ 33).

Plaintiffs suggest that testimony from Mr. Michael Freeman, a general manager at the Clifton Costco, shows that Costco employees permitted customers to open sealed produce containers and eat while shopping. (Pls. Supp. SUMF ¶¶ 43–44 (citing Def. Ex. G at 186, 16:18–20 & 187, 17:15–22)). Meanwhile, Defendants maintain Mr. Freeman "did not testify that [Costco employees] encouraged customers to eat while shopping." (Reply Br. at 12 (citing Def. Ex. G at 188, 18:1–18); Def. Resp. SUMF ¶¶ 44–49).

***Daily Floor Walks.*** Clifton Costco employees perform daily floor walks to inspect for hazardous conditions. (Def. SUMF ¶ 8; Pls. Resp. SUMF ¶ 8). Each hour, employees "conduct hourly walkthroughs . . . to inspect for hazards and other issues." (Def. SUMF ¶ 8; Pls. Resp. SUMF ¶ 8). Employees cover all areas of the store during their floor walks. (Def. SUMF ¶ 11; Pls. Resp. SUMF ¶ 11). Neither Ms. Nunez nor her son could "recall ever encountering any spilled produce on the floor of [the Clifton Costco] prior to the date of the Incident." (Def. SUMF ¶ 17; Pls. Resp. SUMF ¶ 17 (citing Def. Ex. F at 139, 11:18–23 ("Q. At any time before the date of your mother's accident . . . when you were at Costco, had you ever seen anything on the floor that you felt shouldn't have been on the floor? A. No, I usually found [Costco] to be normally clean."))). Both parties agree that, on the evening of the incident, "there were no issues with lighting" inside the store. (Def. SUMF ¶ 20; Pls. Resp. SUMF ¶ 20).

At 7:00 P.M. on the evening Ms. Nunez fell, Ms. Pulgar performed a walkthrough of the store to inspect for hazardous conditions. (Def. SUMF ¶¶ 13–14; Pls. Resp. SUMF ¶¶ 13–14). She took "a cleaning cart around the entire warehouse [and] inspect[ed] the *entire* Warehouse floor (and tire center)" for hazards on the floors. (Def. SUMF ¶ 10 (emphasis in original); Pls. Resp. SUMF ¶ 10). Ms. Pulgar concluded her walkthrough half an hour later at 7:30 P.M.—about fifteen

minutes before the incident occurred around 7:45 P.M.  (Def. SUMF ¶ 14).[4]  The next walkthrough began at 8:06 P.M., about twenty minutes after the incident.  (Def. SUMF. ¶ 14; Pls. Resp. SUMF ¶ 14).

On this record, it is unclear how long the blueberries had been on the floor before the incident occurred on or about 7:45 P.M.  Neither Ms. Nunez nor her son, Justin, knows how long the blueberries had been on the floor prior to the incident.  (Def. SUMF ¶ 21; Pls. Resp. SUMF ¶ 21).  Neither party has entered surveillance footage into the record, nor does either party claim that any eyewitnesses were present.  (*See generally* Def. SUMF; Pls. Resp. SUMF).  Justin stood about 20 to 25 feet away from his mother when she fell, (Def. SUMF ¶ 21; Pls. Resp. SUMF ¶ 21), and only saw "smushed" blueberries on Ms. Nunez's shoe and leggings after the fall (Def. SUMF ¶ 24; Pls. Resp. SUMF ¶ 24).  Costco Front End Manager, Daisy Suarez, photographed "the only blueberry she saw on the ground."  (Def. SUMF ¶ 26; Pls. Resp. SUMF ¶ 26).

On or about August 16, 2022, Plaintiff commenced this negligence and premises liability suit against Defendants in the Superior Court of New Jersey, Law Division, Essex County.  (*See generally* Compl.).  Ms. Nunez's husband, Jose Nunez, also brought a *per quod* claim against Costco alleging loss of consortium based on his wife's injuries.  (*See* Compl. at 5).  On September 13, 2022, Defendant removed the state court action to this Court.  (D.E. No. 1).  Following an unsuccessful settlement conference, (*see* D.E. Nos. 29 & 30), on January 17, 2025, Costco filed the instant Motion wherein it seeks summary judgment on "all claims" Plaintiffs assert against Defendant (Mov. Br. at 9; *see generally* Mot.).

---

[4]      Plaintiffs do not dispute that Ms. Pulgar testified that her walkthrough on the evening in question began at around 7:00 P.M. and concluded around 7:30 P.M.  (Pls. Resp. SUMF ¶ 14).  However, Plaintiffs add that Ms. Pulgar's testimony suggests that "the part of the walk encompassing the subject area" may have occurred before 7:30 PM, the time when the walk concluded.  (*Id*.).

## II.      LEGAL STANDARD

Summary judgment is appropriate if the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if it is supported by evidence such that a reasonable jury could find the fact in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.*

If the party seeking summary judgment makes this showing, the non-moving party must then "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Furthermore, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" *Corliss v. Varner*, 247 F. App'x 353, 354 (3d Cir. 2002) (quoting *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2002)). In deciding the merits of a party's motion for summary judgment, the Court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249.

## III.     ANALYSIS

The instant Motion presents two issues: (i) whether the mode-of-operation doctrine applies to this case; and (ii) if not, whether Costco had actual or constructive notice of the alleged

dangerous condition that caused Ms. Nunez's injuries. (Mov. Br. at 4–11). The Court finds no genuine dispute of material fact on either front. Accordingly, summary judgment is appropriate.

To establish a negligence claim under New Jersey law, a plaintiff must show "'a duty of care owed by the defendant to the plaintiff, a breach of that duty by the defendant, injury to the plaintiff proximately caused by the breach, and damages.'" *Shields v. Ramslee Motors*, 223 A.3d 172, 176 (N.J. 2020) (citing *Robinson v. Vivirito*, 86 A.3d 119, 208 (N.J. 2014)).[5] Business owners, like Costco, owe their invitees "a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." *Nisivoccia v. Glass Gardens, Inc.*, 818 A.2d 314, 316 (N.J. 2003). Furthermore, a plaintiff-invitee who alleges a breach of that duty must prove that the defendant-business owner "had actual or constructive knowledge of the dangerous condition that caused the accident." *Id.*

However, in the "very limited" circumstances where the mode-of-operation rule applies, a plaintiff need not show actual or constructive knowledge to prove that a defendant-business owner breached its duty of care. *See, e.g.*, *Teixeira v. Walmart Stores, Inc.*, No. 18-13103, 2021 WL 4272828, at *2 (D.N.J. Sept. 16, 2021). This "judicially created rule . . . alters a plaintiff invitee's burden of proof in certain premises liability negligence actions." *Jeter v. Sam's Club*, 271 A.3d 317, 324 (N.J. 2022).

Once triggered, the mode-of-operation rule requires the business owner to establish that it "did all that a reasonably prudent man would do in the light of the risk of injury the operation entailed." *Garcia v. Walmart, Inc.*, No. 17-3118, 2021 WL 754006, at *2 (D.N.J. Feb. 26, 2021) (citing *Prioleau v. Kentucky Fried Chicken, Inc.*, 122 A.3d 328, 337 (N.J. 2015)); *see also Jeter*, 271 A.3d at 324 ("Thus '[t]he rule gives rise to a rebuttable inference that the defendant is

---

[5]    The parties brief all claims under New Jersey law and do not make any statements or suggestions to the contrary in their papers.

negligent, and obviates the need for the plaintiff to prove actual or constructive notice.'") (quoting *Prioleau*, 122 A.3d at 335). In other words, the rule was created to reflect the fact that, in some settings, "'as a matter of probability, a dangerous condition is likely to occur as the result of the nature of the business, the property's condition, or a demonstrable pattern of conduct or incidents.'" *Prioleau*, 122 A.3d at 337 (quoting *Nisivoccia*, 818 A.2d at 316).

## A.    Mode-of-Operation Doctrine

Because the Court must only apply the narrow mode-of-operation doctrine in "limited circumstances," *Prioleau*, 122 A.3d at 330, and because Costco sold blueberries "in secure packaging that posed no foreseeable risk that [blueberries] would end up on the floor," *see Jeter*, 271 A.3d at 327, the Court finds that no material question of fact exists regarding whether the mode-of-operation doctrine applies to this case. It does not.

The mode-of-operation rule applies only in self-service settings, where "a business permits its customers to handle products and equipment, unsupervised by employees." *Prioleau*, 122 A.3d at 338. A plaintiff must have been injured by a hazard in an "area[] affected by the business's self-service operations," and there must be "a nexus between self-service components of the defendant's business and a risk of injury in the area where the accident occurred." *Id*.

Here, Defendant effectively concedes that it sells products in a self-service fashion and permits customers to handle produce containers without employee supervision, (*see* Mov. Br. 6–9), but nevertheless contends that the mode-of-operation rule is inapplicable because there exists no "nexus between self-service components of [its] business and a risk of injury in the area where the accident occurred" *see Prioleau*, 122 A.3d at 338. Such a nexus exists when a defendant-business owner sells its products in a fashion that "makes it reasonably foreseeable" that a hazardous condition will occur. *Jeter*, 271 A.3d at 327; *see, e.g.*, *Nisivoccia*, 818 A.2d at 317

(holding that the mode-of-operation rule applied where customers handled grapes packaged in ventilated plastic bags with open tops); *Wollerman v. Grand Union Stores, Inc.*, 221 A.2d 513, 515 (N.J. 1966) (applying the rule to the sale of loose string beans in open bins). On the other hand, when a business owner instead uses a "method that pose[s] virtually no chance of spillage during ordinary, permissible customer handling," the mode-of-operation rule does not apply. *Jeter*, 271 A.3d at 327 (declining to apply the mode-of-operation rule where defendant sold grapes in closed, taped clamshell containers); *see also Knight v. Fam. Dollar Stores, Inc.*, No. A-2531-20, 2022 WL 3905917, at *8 (N.J. Super. Ct. App. Div. Aug. 31, 2022) (declining to apply the rule to the sale of sealed beverages in a refrigerator display).

In *Jeter*, the New Jersey Supreme Court found no "reasonable factual nexus between the self-service activity and the dangerous condition causing plaintiff's injury" when a defendant-business owner "permitted only the self-service sale of pre-packaged sealed grape <u>containers</u> . . . on [a] display," rather than allowing customers to "carry food and beverage items without lids" or to handle produce in "open-top . . . bags." *Jeter*, 271 A.3d at 327 (emphasis in original). In other words, Sam's Club's customers "were intended only to handle the closed grape containers." *Id.* Furthermore, cases after *Jeter* have made clear that the presence or absence of tape on a closed container does not determine whether the mode-of-operation rule applies. For example, in *Scalera*, the court declined to apply the mode-of-operation rule to a negligence claim arising from the defendant's sale of strawberries in clamshell containers not secured by tape, reasoning that, "[w]hile the court in *Jeter* found that taping the clamshell containers proved to be a method which posed 'virtually no chance of spillage,' **the taping of the containers was not the lynchpin of the court's analysis.**" *Scalera v. Costco Wholesale Corp.*, No. 21-14425, 2024 WL 3219263, at *4 (D.N.J. June 28, 2024) (quoting *Jeter*, 271 A.3d at 327) (emphasis added). Rather, *Scalera* noted

that "the focus of the *Jeter* court was the chance of spillage 'during the ordinary, permissible customer handling [of the packaging].'"  *Id.* (quoting *Jeter*, 271 A.3d at 327).  In short, "the analysis in *Jeter* hinged on 'whether packaging of the grapes in closed clamshell containers ma[de] it reasonably foreseeable that grapes [would] drop on the floor'"—and not on whether the containers were taped or might occasionally pop open. *Id.* (citing *Jeter*, 271 A.3d at 327 (rejecting plaintiff's argument that "packages pop open all the time")).

Here, Plaintiffs argue that this Court should not grant summary judgment, in part, because there is a genuine dispute as to whether Costco sold its blueberries in sufficiently secure containers. (*See* Opp. Br. at 13–16).  Both parties agree that Costco sells blueberries packaged in clamshell containers with "pinch points" at each corner, exactly like the ones in *Jeter*.  (Def. SUMF ¶ 4; Pls. Resp. SUMF ¶ 4); *see Jeter*, 271 A.3d at 326.  However, Plaintiffs point to Costco employees' testimony in the record to counter that the containers "are not always taped" and that "sometimes the plastic containers pop open."  (Pls. Resp. SUMF ¶ 4 (citing Def. Ex. G at 190, 20:19–25 & Def. Ex. H. at 242, 21:12–25)).  Plaintiffs argue that this testimony creates a genuine dispute of material fact regarding whether Costco sold its blueberries using a method that warrants the application of the mode-of-operation doctrine.  (Opp. Br. at 13–16).

The Court disagrees.  The Defendant's blueberry clamshell containers with "pinch points" in each corner are akin to the grape clamshell containers in *Jeter*.  As in *Jeter*, the record makes clear that Defendant's customers "were not intended to handle the [blueberries] or package the [blueberries] themselves. They were intended only to handle the closed . . . containers." *See Jeter*, 271 A.3d at 327.  Moreover, even if this Court accepts that the blueberry containers are only sometimes taped and may pop open—these facts do not relieve Plaintiffs from having to prove actual or constructive notice under the relevant case law.  *Scalera* confirmed that the pertinent

9

analysis is whether the packaging used poses a "chance of spillage 'during . . . ordinary, permissible customer handling'" and *not* whether the containers are taped or might occasionally pop open.  *See Scalera*, 2024 WL 3219263, at *4 (citing *Jeter*, 271 A.3d at 327).  And here, like in *Scalera*, there is evidence in the record that the containers used have "been very effective in reducing the chance of spillage."  *Scalera*, 2024 WL 3219263, at *4.  For example, Ms. Nunez and her son could not "recall ever encountering any spilled produce on the floor of [Costco] prior to the date of the Incident."  (Def. SUMF ¶ 17 (citing Def. Ex. F at 139, 11:18–23 ("No, I usually found [Costco] to be normally clean.")));  *see also Scalera*, 2024 WL 3219263, at *4 ("Further, Plaintiff herself also testified that in over 25 years of going to this warehouse, she had never seen strawberries on the floor.").

        In addition, Plaintiffs argue that Costco employees allowed or even encouraged customers to open produce packages—including blueberry containers—while they shopped in the store.  (Opp. Br. at 11; *see also* Pls. Supp. SUMF ¶¶ 45–47 (stating that the opening of produce packages to eat while shopping "was not strictly discouraged, and was only addressed on an unclear, case-by-case basis")).  Plaintiffs contend that testimony from Mr. Freeman, general manager at the Clifton Costco, shows that employees, at the least, permitted the practice.  (Pls. Supp. SUMF ¶ 44 (citing Def. Ex. G at 187, 17:15–22)).  In response, Defendant emphasizes that Mr. Freeman "did not testify that [Costco employees] encouraged customers to eat while shopping," and, in fact, testified that "it's discouraged."  (Reply Br. at 12 (citing Def. Ex. G at 188, 18:1–18; Def. Resp. SUMF ¶¶ 43–49).  Moreover, Defendant argues that Clifton Costco front-end manager Ms. Suarez testified that "blueberry containers . . . being opened by customers was not a common occurrence."  (Reply Br. at 12 (citing Def. Ex. H at 243, 22:2–8)).

Relevant here, *Jeter* found the same argument unpersuasive—that is, because "Sam's Club knew its customers occasionally opened the grape containers in store" summary judgment should be denied. *Jeter*, 271 A.3d at 327. Rather, *Jeter* focused on the undisputed material fact that "Sam's Club sold grapes in secure [clamshell] packaging" and that such packaging "posed no foreseeable risk that grapes would end up on the floor." *Id.* Since *Jeter*, other courts similarly have been unconvinced by arguments that the mode-of-operation rule should apply when a defendant-business owner knows that its customers sometimes open food containers while shopping. *See, e.g.*, *Knight*, 2022 WL 3905917, at *8 (rejecting plaintiff's argument that the mode-of-operation rule should apply to the sale of closed beverages in a refrigerator where defendant had a so-called "practice" of permitting customers to open and consumer the beverages in the store, because "there [was] no evidence in the record that defendant permitted the beverages to be opened and consumed on the premises as a part of its business operation"). For these reasons, even assuming Defendant knows that customers occasionally open otherwise-secure food packaging, this fact does not warrant application of the mode-of-operation rule.

In light of the fact that the mode-of-operation doctrine only applies in very "limited circumstances," *Prioleau*, 122 A.3d at 330, and because Costco sold blueberries "in secure packaging that posed no foreseeable risk that [they] would end up on the floor," *Jeter*, 271 A.3d at 327, the Court finds that no genuine dispute of material fact regarding whether the mode-of-operation doctrine applies to this case.

### B. Constructive Notice

Given the Court's finding that the mode-of-operation doctrine is inapplicable, Plaintiffs must show that Defendant had actual or constructive notice of the blueberries that caused her to slip and fall in the meat department. As neither party appears to suggest that Costco had actual

knowledge of the hazardous condition at issue, (*see* Mov. Br. at 9–12; Opp. Br. 5–8), the Court next considers whether there exist any material questions of fact regarding Costco's constructive knowledge of the same.  It finds none.

A defendant has constructive notice of a hazardous condition when it persisted "'for such a length of time as reasonably to have resulted in knowledge and correction had the defendant been reasonably diligent.'"  *Troupe v. Burlington Coat Factory Warehouse Corp.*, 129 A.3d 1111, 1114 (N.J. App. Div. 2016) (citing *Parmenter v. Jarvis Drug Stores, Inc.*, 138 A.2d 548, 550 (N.J. App. Div. 1957)).  Accordingly, "the length of time that the dangerous condition was present is key to determining whether constructive notice existed."  *Cuzco v. Wal-Mart Stores, Inc.*, No. 17-7125, 2022 WL 4300183, at *4 (D.N.J. Sept. 19, 2022) (citing *Garcia*, 2021 WL 754006, at *5).  In this regard, a plaintiff fails to prove constructive notice when he or she cannot identify any facts in the record indicating "how long the dangerous condition itself was present."  *Saunders v. Wal-Mart Stores, Inc.*, No. 21-1941, 2022 WL 832050, at *2 (3d Cir. Mar. 21, 2022) (emphasis omitted) (citing *Parmenter*, 138 A.2d at 550).  A court will look for evidence like video footage, eyewitness testimony, and whether the plaintiff his or herself noticed the hazard or has knowledge of when it was created.  *See, e.g*, *Choi v. Costco Wholesale Corporation*, No. 22-3329, 2024 WL 658972, at *3 (3d Cir. Feb. 16, 2024).

In fact, just last year, the Third Circuit upheld a grant of summary judgment to this *very same* defendant for a negligence claim arising out of nearly identical factual circumstances.  *See Choi*, 2024 WL 658972, at *1. There, the plaintiff slipped and fell on an "oily substance" on the floor of another Costco store.  *Id*.  Because the plaintiff in that case "did not see anything on the floor," "did not know how the substance first appeared on the floor," and could not say "for how long" the substance had been on the floor, the Third Circuit held that "no rational jury could

12

determine that Costco had constructive notice of the condition." *Id*. at *1–2. The Third Circuit did not chart a new course with its decision in *Choi*. To the contrary, that decision built upon a wealth of caselaw which reached the same result in similar circumstances. In *Troupe*, for example, where a plaintiff slipped and fell on a berry in a department store, another court held that no reasonable juror could conclude that the defendant had constructive notice of the alleged hazardous condition because "[t]here were no eyewitnesses and nothing about the characteristics of the berry that would indicate how long it had been there," "[t]here were no other berries in the vicinity," and "[n]o one was found to have been eating berries in the area." *Troupe*, 129 A.3d at 1114; *see also Polit-Baquero v. Walmart Stores E., L.P.*, No. 23-1287, 2024 WL 469304, at *2 (3d Cir. Feb. 7, 2024) (affirming a grant of summary judgment where plaintiff "point[ed] to no evidence showing how long the hazard existed [and did] not reference [defendant's] video or any evidence establishing how long the liquid existed on the floor").

Here, exactly as in *Choi* and the litany of cases like it, Plaintiffs have not pointed to any evidence from which a reasonable juror could determine how long the blueberry/ies had been on the floor before Ms. Nunez fell. The parties agree that neither Ms. Nunez nor her son, Justin, recalled encountering spilled produce on the floor of the store before the incident, (Def. SUMF ¶ 17; Pls. Resp. SUMF ¶ 17), and that neither Ms. Nunez nor Justin knows how long the blueberries had been on the floor prior to the incident (Def. SUMF ¶ 21; Pls. Resp. SUMF ¶ 21). Plaintiffs further fail to identify any evidence in the record regarding "characteristics of the berry that would indicate how long it had been there." *Troupe*, 129 A.3d at 1114; (*see generally* Def. SUMF; Pls. Resp. SUMF). What's more, neither party has entered surveillance footage into the record, nor does either party claim that any eyewitnesses were present. (*See generally* Def. SUMF; Pls. Resp.

SUMF).  In other words, no one involved has any idea at all how long the hazardous condition existed before the incident occurred.

Nor can Plaintiffs here prevail without such evidence by "point[ing] to other factors that should have made the defendant aware of the dangerous condition."  *Scalera*, 2024 WL 3219263, at *5 (citing *Bezglasnaya v. Trump Ent. Resorts, Inc.*, No. 11-0564, 2013 WL 796308, at *4 (D.N.J. Mar. 4, 2013)).  In some instances, courts have found triable questions on constructive notice "where the length of time a dangerous condition was present was very short or undetermined, but other factors were present that should have put defendants on notice."  *Teixeira*, 2021 WL 4272828, at * 5.  The *Teixeira* court noted, for example that courts have denied summary judgment to defendants in cases where inclement weather should have made employees more cautious, where an "employee was present in the area" immediately before a plaintiff's fall, and where evidence in the record indicated that the part of the store where an incident occurred was "highly trafficked or particularly dangerous."  *Id*. (first citing *Yazujian v. PetSmart*, No. 13-6202, 2016 WL 4408817, at *9–11 (D.N.J. Aug. 16, 2016); and then citing *Romeo v. Harrah's Atlantic City Propco, LLC*, 168 F. Supp. 3d 726, 732 (D.N.J. March 10, 2016); *Garcia*, 2021 WL 754006, at *3–4).  In cases where exigent circumstances like these exist, courts have held that defendants "should have closely monitored the area where plaintiff fell."  *See Bezglasnaya*, 2013 WL 796308, at *5; *see also McCracken v. Target Corp.*, No. 09-4816, 2011 WL 1466075, at *4 (D.N.J. Apr. 18, 2011) (denying summary judgment when "a reasonable jury could conclude that [the defendant] should have monitored the floor to ensure that it was clear of hazards" on a more frequent basis because the area at issue was prone to "constant traffic" and "bottlenecking").

However, in this case, Plaintiffs "put[] forward no additional facts that could lead to an inference that [Costco] had constructive notice" despite their inability to establish how long the

blueberry/ies had been on the floor before the accident occurred. *Teixeira*, 2021 WL 4272828, at *5. Unlike *Yazujian*, *Romeo*, and *Garcia*, Plaintiffs cannot point to any evidence in the record to suggest that there was some exigent circumstance (like inclement weather, or that the area where Ms. Nunez fell was unusually dangerous) such that a jury could conclude that Costco "should have monitored the area more vigilantly." *See Bezglasnaya*, 2013 WL 796308, at *4. In fact, record evidence suggests the contrary: Costco employees performed floor walks to check the floor for hazards hourly. (Def. SUMF ¶ 8; Pls. Resp. SUMF ¶ 8). And on the evening Ms. Nunez fell, Costco employee Genevieve Pulgar performed the walkthrough of the store to inspect for hazardous conditions, beginning at 7:00 P.M. and concluding half an hour later—only about fifteen minutes before the incident occurred at around 7:45 P.M. (Def. SUMF ¶¶ 13–14; Pls. Resp. SUMF ¶¶ 13–14).

In short, not only have Plaintiffs been unable to point to any evidence at all showing how long the hazard existed, but uncontested evidence in the record shows that Costco employees did "closely monitor[] the area." *See Bezglasnaya*, 2013 WL 796308, at *5. Because "the mere '[e]xistence of an alleged dangerous condition is not constructive notice of it[,]'" *Arroyo v. Durling Realty, LLC*, 78 A.3d 584, 586 (N.J. App. Div. 2013) (quoting *Sims v. City of Newark*, 581 A.2d 524, 530 (N.J. Law Div. 1990)), and because "[t]he absence of evidence of 'actual or constructive notice . . . is fatal to plaintiff's claims of premises liability[,]'" *Scalera*, 2024 WL 3219263, at *5 (quoting *Arroyo*, 78 A.3d at 586–87), summary judgment in favor of the Defendant is appropriate.

## IV. CONCLUSION

At bottom, no genuine disputes of material fact exist that would (i) render the mode-of-operation doctrine applicable or (ii) allow a reasonable juror to conclude that Costco had actual or

constructive notice of the blueberry/ies that Ms. Nunez contends caused her injuries. Accordingly,

summary judgment is appropriate for this matter. An appropriate Order accompanies this Opinion.


**Dated: October 3, 2025**                                     _/s/Esther Salas_____
                                                              **Hon. Esther Salas, U.S.D.J.**